**1478**

ALBERTSON'S, INC., doing business as Grocery Warehouse; Dale Rigsby; Bryan Brown; Don Inman; Ronald Cook, Petitioners,

v.

Jim R. CARRIGAN, District Judge, Respondent,

Alfreda Aguirre; Ralph I. Aguirre, Plaintiffs–Real Parties In Interest.

Alfreda AGUIRRE; Ralph I. Aguirre, Plaintiffs–Appellees,

v.

ALBERTSON'S, INC., doing business as Grocery Warehouse; Dale Rigsby; Bryan Brown; Don Inman; Ronald Cook, Defendants–Appellants.

Nos. 92–1197, 92–1198.

United States Court of Appeals, Tenth Circuit.

Jan. 5, 1993.

James E. Hautzinger and Andrew W. Volin of Sherman & Howard, Denver, CO, for defendants-appellants.

Michael F. Scott, Denver, CO, for plaintiffs-appellees.

Before LOGAN, TACHA and KELLY, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Alfreda Aguirre, a union employee covered by a collective bargaining agreement, was suspended from her employment at Albertson's after she was accused of shoplifting.[1] Mrs. Aguirre and her husband, Ralph I. Aguirre, filed a complaint in Colorado district court alleging that defendants Albertson's Inc., Dale Rigsby, Bryan Brown, Don Inman, and Ronald Cook unlawfully suspended Mrs. Aguirre from employment and conspired to accuse her falsely of shoplifting from her employer, Albertson's.[2] The complaint alleged a single claim for "extreme and outrageous conduct," inflicting upon plaintiff "severe emotional distress." App. of Petitioners at 1 (hereafter App.). Defendants removed the action to federal district court based upon federal labor law preemption

pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Defendants then filed a motion to dismiss, alleging that the action was preempted by § 301. Plaintiffs filed a motion to remand to state court. The district court determined that plaintiffs' claim for outrageous conduct actually consisted of two claims: one based on suspension and one based on conspiracy to charge Mrs. Aguirre with shoplifting. The district court construed the motion to dismiss as a motion for summary judgment. It dismissed the suspension claim on federal preemption grounds, but concluded that the conspiracy claim was not preempted because it did not require interpretation of the collective bargaining agreement (CBA). However, because diversity jurisdiction no longer existed, the district court exercised its discretion and remanded that claim to state court.

Defendants both appealed (No. 92–1198) and filed a petition for writ of mandamus (No. 92–1197). They argue that plaintiffs' claim of outrageous conduct is completely preempted and, therefore, the complaint should have been dismissed in its entirety without remand of the conspiracy claim to the state court.

I

The threshold question we must decide is whether the district court's remand order is reviewable. Although remand orders issued on the grounds stated in 28 U.S.C. § 1447(c) are not reviewable, 28 U.S.C. § 1447(d); *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976); *Indian Country, U.S.A., Inc. v. State of Okla. ex rel. Okla. Tax Comm'n*, 829 F.2d 967, 970 n. 1 (10th Cir.1987), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988), here review is permissible because the district court did not remand on the basis of a defect in removal procedure

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for writ of mandamus and appeal. *See* Fed.R.App.P. 34(a);

10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

2. Mr. Aguirre alleged a loss of consortium.

or for lack of subject matter jurisdiction pursuant to § 1447(c). Rather, the court acknowledged its jurisdiction under § 301, although it had to dismiss the suspension claim to permit arbitration under the CBA. *See Avco Corp. v. Aero Lodge No. 735, Int'l Association of Machinists*, 390 U.S. 557, 560–61, 88 S.Ct. 1235, 1237–38, 20 L.Ed.2d 126 (1968). The court considered the claim based on conspiracy to charge with shoplifting as a pendent state claim, and remanded as an exercise of its discretion based on considerations of efficient use of judicial resources, the interests of the parties, and comity. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 622–23, 98 L.Ed.2d 720 (1988). A remand based on a district court's perceived discretion is not ordered pursuant to § 1447(c). *See Price v. PSA, Inc.*, 829 F.2d 871, 874 (9th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). The policy of *Thermtron Products*, 423 U.S. at 351–52, 96 S.Ct. at 593, to avoid protracted litigation of jurisdictional issues, is inapplicable when a court remands a case on grounds not specified in § 1447(c). Thus, we have authority to review the remand. *See J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267, 270–71 (7th Cir.1990); *Price*, 829 F.2d at 874; *Scott v. Machinists Automotive Trades Dist. Lodge No. 190*, 827 F.2d 589, 592 (9th Cir.1987).

■ We next conclude review must be by mandamus. The remand order is not appealable because unlike *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342 (10th Cir. 1992), it did not result from a determination on the merits of a nonjurisdictional issue. *Price*, 829 F.2d at 874. However, appeals courts may use mandamus to compel a district court to exercise its jurisdiction when it has a duty to do so. *Mallard v. United States Dist. Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). We recognize that mandamus is a drastic remedy which may be invoked only in extraordinary situations, and that a party seeking mandamus must demonstrate a clear abuse of discretion amounting to usurpation of judicial power, lack of an adequate alternative means of relief, and a

clear and indisputable right to issuance of the writ. *Id.* at 309, 109 S.Ct. at 1822. Nevertheless, mandamus is the only appropriate remedy here. "[B]ecause an order remanding a removed action does not represent a final judgment reviewable by appeal, '[t]he remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done.'" *Thermtron Products*, 423 U.S. at 352–53, 96 S.Ct. at 593–94 (quoting *Chicago & Alton R.R. v. Wiswall*, 90 U.S. (23 Wall.) 507, 508, 23 L.Ed. 103 (1875)); *see J.O.*, 909 F.2d at 271; *In re Life Ins. Co. of N. Am.*, 857 F.2d 1190, 1193 (8th Cir.1988).

## II

■ Defendants assert that plaintiffs' claims are completely preempted by § 301 of the Labor Management Relations Act. Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. § 185(a). Section 301

> preempts state causes of action addressing "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, ... whether such questions arise in the context of a suit for breach of contract or a suit alleging liability in tort."

*Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1155 (10th Cir.) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985)), *cert. denied*, —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). Thus, "[w]hen resolution of a state law claim depends upon analysis of the terms of a labor agreement, section 301 will preempt that claim." *Saunders*, 927 F.2d at 1155. Plaintiffs often attempt to avoid federal jurisdiction under § 301 by framing their complaints in terms of state law theories such as conspiracy. Courts, therefore, look beyond the allegations of the complaint, often to the petition for removal, to determine whether

the wrong complained of arose from a breach of obligations under the collective bargaining agreement. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992); *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. v. Bechtel Power Corp.*, 834 F.2d 884, 888 (10th Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988).

The Supreme Court has recognized that the presence of a § 301 question in a defensive argument does not overcome a "well-pleaded complaint" setting forth a state claim not involving the CBA; that a plaintiff, as master of the claim, may forgo a claim based on federal law to sue in state court by pleading what is "plainly a state-law-claim." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987). The district court, however, ruled that the complaint before us was not well-pleaded, but was "poorly drafted." App. at 88. The court read what purported to be a single claim for extreme and outrageous conduct as stating one federal § 301 claim for unlawful suspension from employment and a second claim for conspiracy to charge Mrs. Aguirre with shoplifting. If we view the complaint this way, this is not a situation like *Caterpillar* in which plaintiff decided to forgo the federal claim in order to litigate in state court. As we read the complaint, however, it attempted to plead only one state law claim for outrageous conduct intending to cause emotional distress. Plaintiffs, of course, did not forgo Mrs. Aguirre's claim for loss of employment. The union is still processing a claim for her suspension "without good and sufficient cause" under the arbitration provisions of the CBA, by which she seeks to be "made whole for all losses." App. at 12. Thus, whether we view the case as did the district court or as an attempt to state a single state-based claim, plaintiffs have not wholly eschewed their federal remedy for Mrs. Aguirre's discharge from employment in favor of an entirely different state-based claim.

We believe it does not matter whether the complaint is viewed as stating one claim or two. If we agree with the district court that plaintiffs have stated one federal claim that had to be dismissed for arbitration under the CBA, and a truly separate, pendent, state claim, we will not reverse the remand order. The Supreme Court has held that a district court has the discretion to remand pendent state claims "upon a proper determination that retaining jurisdiction over the case would be inappropriate." *Carnegie–Mellon,* 484 U.S. at 357, 108 S.Ct. at 622–23. Discretionary remand is essential for dealing with pendent claims "in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* In *Carnegie–Mellon* the district court had remanded after the plaintiffs amended their complaint to drop their only federal claim. The Supreme Court did not explicitly discuss whether the district court abused its discretion, but it did affirm the circuit court's denial of the defendant's petition for a writ of mandamus.

In the instant case the district court dismissed what it found to be the federal claim, to fulfill the parties' obligation to arbitrate under the CBA. Thus, there was no longer any federal claim pending before the court. In remanding the court emphasized the principles set out in *Carnegie–Mellon.* In analogous circumstances, when the district court no longer has a federal claim pending and there is no danger that the statute of limitations will cause loss of a state-based cause of action, this court routinely affirms dismissals of pendent claims. *See, e.g., Edwards v. First Nat'l Bank, Bartlesville, OK,* 872 F.2d 347, 352 (10th Cir.1989); *Marks v. Lyon County Bd. of County Comm'rs,* 590 F.Supp. 1129, 1134 (D.Kan.1984).

■ The same principle applies if we view the complaint as making a single state law claim, recognizing that a claim under the CBA is being pursued separately. We have to ask whether the state claim is truly distinct and not preempted by the CBA arbitration of the discharge. We review preemption in either context de novo. *See*

*Allis–Chalmers,* 471 U.S. at 214, 216, 105 S.Ct. at 1912–13, 1913–14.

This court has held three times that a cause of action for intentional infliction of emotional distress or outrageous conduct in a discharge context is preempted by § 301. *Mock,* 971 F.2d at 529 (intentional infliction of emotional distress, defamation, and false light portrayal); *Viestenz v. Fleming Cos., Inc.,* 681 F.2d 699, 702–04 (10th Cir.1982) (outrageous conduct); *Johnson v. Beatrice Foods Co.,* 921 F.2d 1015, 1020 (10th Cir. 1990) (intentional infliction of emotional distress). Two of these cases, *Mock* and *Viestenz,* involved accusations of theft of the employer's property.

Despite some broad language in these cases all three are distinguishable from the situation before us. In *Viestenz* the alleged outrageous conduct consisted of threats or comments made during an internal investigation of employee thefts, in what could be considered the grievance procedure itself ("Viestenz was aware that he was entitled to have a union representative present" at the interview in which the threats or comments were made). 681 F.2d at 700. In *Viestenz* we also concluded that the conduct was not sufficiently outrageous to be separated from the fact of the employee's discharge. *Id.* at 703–04. In *Johnson* the acts that formed the basis of the outrageous conduct claim were alleged acts of harassment on the job by Johnson's superior, many of which were in the form of grievances filed against Johnson invoking procedures set out in the CBA. We held that it could not be determined whether the conduct was outrageous "without determining whether the conduct was allowed under the CBA." 921 F.2d at 1020. *Mock* also involved alleged wrongful interrogation, abuse and coercion in investigating employees for thefts of the employer's assets with the alleged intent of depriving the plaintiff-employees of their jobs. 971 F.2d at 524. Noting that all of the state law claims "arose out of conduct alleged to have occurred during the course of an investigation by [the employer]," and would "inevitably require an analysis of what the CBA permitted," we found § 301 preemption. *Id.* at 530.

In the case before us, there is no doubt that many, if not all, of the same factual issues and disputes will have to be resolved in arbitrating the discharge under the CBA as in determining the conspiracy or outrageous conduct claim. But, it is also true that if plaintiffs can show defendants conspired to have Mrs. Aguirre arrested by fabricating her theft of groceries from her employer, proving their outrageous conduct need not require interpretation of or reference to the CBA. We believe the case before us is akin to the facts in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). There, the plaintiff was allegedly discharged for filing a false workers' compensation claim. Her union, as in the instant case, filed a grievance pursuant to the CBA. That plaintiff subsequently filed an action in state court alleging that she had been discharged for exercising her rights under the state workers' compensation laws. After the case was removed to federal court the district court granted the defendant's motion for dismissal of the motion, concluding that the claim was " 'inextricably intertwined' with the collective bargaining provision prohibiting wrongful discharge or discharge without just cause." *Lingle v. Norge Div. of Magic Chef, Inc.,* 618 F.Supp. 1448, 1449 (S.D.Ill.1985). The Seventh Circuit agreed. In reversing, the Supreme Court reiterated the *Allis–Chalmers* rule, but concluded that even though the state law claim analysis might involve the same factual consideration as the contractual determination, dismissal was not required. The Court reasoned that so long as the state law claim could be resolved without resort to the agreement itself, the claim was independent for § 301 preemption purposes; therefore, § 301 preemption occurs "only if ... application [of state law] requires the interpretation of a collective-bargaining agreement." *Lingle,* 486 U.S. at 413, 108 S.Ct. at 1885. Although in the case before us we are not dealing with workers' compensation, we believe the principle to be the same.

If we were to hold § 301 preempts plaintiff's state law claim that defendants con-

spired to set her up for arrest and imprisonment just because the same factual disputes would be present in arbitration under the CBA, it would seem to be virtually impossible for a plaintiff to set out a state claim when the complaint also states a federal § 301 claim or a grievance procedure is commenced under the CBA. We cannot reconcile such a conclusion with *Lingle.* *See also Farmer v. United Brotherhood of Carpenters & Joiners,* 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977) (union member's suit against union officials for intentional infliction of emotional distress not preempted if unrelated to employment discrimination or particularly abusive).

Therefore the petition for mandamus relief (No. 92–1197) is DENIED. The appeal is DISMISSED (No. 92–1198).